### ROBERTS v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—VERDICT.—Judge should not direct a verdict where the testimony of plaintiff as to whether she could or would have gone to her sister in her last illness if telegram had been delivered promptly, presents an irreconcilable conflict, as that is for jury.

2. ADMISSION OF IRRELEVANT EVIDENCE is not reversible error, unless appellant show it was prejudicial.

3. MENTAL ANGUISH.—Statement of plaintiff to the effect that she would not have suffered mental anguish if she could have seen and consoled her sister before death, does not show that she did not suffer mental anguish when non-delivery of telegram in time prevented her attending the funeral.

Before PRINCE, J., Cherokee, ————.    Affirmed.

Action by Jennie Roberts against Western Union Telegraph Co.    From judgment for plaintiff, defendant appeals.

*Messrs. G. H. Fearons, Evans & Finley* and *J. C. Jeffries,* for appellant, cite: *Judge should have directed a verdict, as plaintiff's evidence showed she could not have reached her*

*sister if telegram had been promptly delivered:* 72 S. C., 526; 75 S. C., 201.

*Messrs. Butler* and *Osborne,* contra, no citation.

March 8, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is the second appeal herein; (the first is reported in 73 S. C., 520, 53 S. E., 985.)

The action is for damages arising from mental anguish, alleged to have been suffered by the plaintiff, in consequence of the failure of the defendant to deliver the following telegram:

"Toccoa, Ga., 1-1-24.
To Mrs. Jennie Roberts, Blacksburg, S. C.

Fannie will not live but a few hours.

W. E. Acree."

The message was sent on Sunday, the 24th of January, 1904, and was received by the agent of the defendant at Blacksburg, about 2 o'clock p. m.

His Honor, the presiding Judge, charged the jury that, "there is no evidence that made it the duty of the defendant company to deliver the telegram on Sunday, and on its failure to deliver on Sunday, negligence cannot be predicated, and the company is not responsible."

About 3 or 4 o'clock on Monday afternoon (25th January), the plaintiff upon returning from a visit to a neighbor was informed that some one with a message had been looking for her. She telephoned for the message and received it about 7 o'clock p. m.

Her sister died on Sunday night about 10 o'clock, and the funeral took place about 4 o'clock Monday afternoon.

The jury rendered a verdict in favor of the plaintiff for $550.00 and the defendant appealed.

The first question to be determined is, whether the plain-

tiff's own testimony showed that she would not and could not have gone to her sister's funeral, if the telegram had been promptly delivered on Monday morning, within a reasonable time after the office hours began.

The plaintiff testified as follows: "Q. If this telegram had been delivered to you promptly, state whether or not you would have gone to be with your sister? A. I most assuredly would. * * * Q. I asked you whether or not, if this telegram had been promptly delivered there, Sunday afternoon or Monday morning, whether or not you would have taken steps immediately to have gone to Toccoa? A. Yes, sir, most assuredly. * * * Q. What would you have done if you had received this telegram promptly? A. I would have gone, of course, to Toccoa. Q. Now, as to the trains, you might have gone on. Could you have gone on 39 Monday morning? A. Yes, sir, I guess I could. Q. Could you have gone on 37 Monday? A. I do not know whether I could have. Q. 37 is a vestibule train? A. Yes, sir. Q. Could you have gone on No. 11 Monday? A. Yes, sir." * * *

(The testimony shows that No. 39 passes Blacksburg about 10 o'clock in the forenoon and arrives at Toccoa at 1.18 p. m.; No. 37 passes about 11 o'clock and arrives at Toccoa at 2 p. m.; No. 11 passes at 2.30 and arrives at Toccoa at 7.30 p. m.)

"Q. Tell us then how long a notice you would have to have before you could have taken the train for Toccoa, Ga.; in other words, how long would it have taken you to have made preparations to have gone there, if you wanted to go? A. A half a day, or day; something like that."

The appellant's attorneys contend, that the plaintiff could not have attended the funeral, even if she had so desired, for the reason that the two trains, upon which she could have reached Toccoa in time, passed Blacksburg before she could have completed her arrangements, preparatory to becoming a passenger. The testimony as to the time necessary to make her arrangements must be considered in con-

nection with the other testimony, which produces an irreconcilable conflict, the solution of which was peculiarly within the province of the jury.

The next error assigned is that his Honor, the presiding Judge, allowed the plaintiff to introduce certain testimony, to which the defendant objected, on the ground that it was irrelevant. Even conceding that it was irrelevant, it has not been made to appear that it was prejudicial.

The appellant also contends that there was error in refusing to grant a nonsuit on the ground that, "no mental anguish could result to the plaintiff from her own statement of facts," and relies upon the following testimony: "Q. If you could have gotten there and seen your sister before she died, and talked with her before she died—of course you are worried about your sister's dying—but if you could have gotten there and talked with your sister, and consoled her before she died, you would have had no mental anguish against the company? A. Of course not."

This testimony fails to show that she did not suffer mental anguish, when the non-delivery of the message prevented her from attending the funeral.

These views practically dispose of all the questions presented by the exceptions.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.